* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employee-employer relationship existed on August 2, 2003.
2. Key Risk Insurance Co. was the carrier on the risk.
3. As of August 2, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter.
5. Plaintiff sustained a compensable injury to her right upper extremity and cervical spine on August 2, 2003. Defendants deny that plaintiff sustained an injury to her lumbar spine as a result of the accident on August 2, 2003.
6. In addition, the parties stipulated into evidence the following:
 a. Plaintiff's discovery responses.
 b. An incident report.
 c. Transcript of recorded statement.
 d. Forms 22 for plaintiff and a similar employee.
 e. Packet of medical records and reports.
7. The Pre-Trial Agreement dated May 2, 2005 and a Form 60, which were submitted by the parties to the Deputy Commissioner, are incorporated by reference.
8. The issues before the Full Commission are whether plaintiff sustained an injury to her lumbar spine on August 2, 2003 and, if so, what benefits plaintiff is entitled to receive.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 51 years old, a high school graduate and completed training to be a licensed practical nurse (LPN). Plaintiff worked as an LPN at hospitals, in home care situations and for temporary staffing agencies.
2. In July 2003, plaintiff began working for defendant-employer as a night shift staff nurse. She worked weekends at the geriatric care facility under the Baylor plan, so she was paid for 32 hours even though she only worked two 12-hour shifts. Her duties included supervising nursing assistants, giving medications to the patients on her assigned hall, noting information in patient charts, making sure patients were fed, and helping to reposition patients, if necessary.
3. On August 2, 2003, plaintiff sustained a compensable injury by accident. Plaintiff tried to pull open a drawer on the medication cart, but the drawer was stuck. Plaintiff yanked hard on the drawer and fell backwards onto the floor with the drawer in her lap. When plaintiff caught the drawer, she experienced pain from her neck to her right shoulder. After reporting the injury, plaintiff was sent to the emergency room at Nash General Hospital, where she was treated with medication for symptoms in her neck and shoulder.
4. On August 7, 2003, plaintiff was sent to Nash Urgent Care and was examined by Dr. Matthew Mullen. Plaintiff complained of pain in her right neck and shoulder, with numbness and tingling in her right arm and hand. Dr. Mullen prescribed medication for plaintiff and restricted her to light duty. Plaintiff's symptoms persisted, and she subsequently underwent an MRI. In view of her persistent symptoms, her problems holding objects and the findings of the MRI, Dr. Mullen referred plaintiff to an orthopedic surgeon.
5. On September 8, 2003, the physician's assistant for Dr. Gilbert Whitmer evaluated plaintiff and noted that she complained of pain from her right arm into her neck, with decreased sensation in her right hand. He ordered epidural steroid injections, which did not relieve plaintiff's pain. Another physician's assistant examined plaintiff on October 7, 2003 and ordered nerve testing, which was performed on October 15, 2003. The nerve testing was consistent with cervical radiculopathy at C7. Since the MRI had shown a herniated disc at C6-7 with spondylosis at that level, the physician's assistant subsequently arranged for plaintiff to have surgery by Dr. David Miller. On December 3, 2003, Dr. Miller performed surgery to decompress and fuse the C6-7 interspace.
6. On January 6, 2004, plaintiff returned to Dr. Miller for a post-surgical follow-up. Plaintiff's only complaint regarding her neck and upper extremity was some pain in her right shoulder. Dr. Miller thought the pain was due to tendonitis or bursitis, so he injected the joint. Plaintiff testified that by March 23, 2004, her arm pain had completely resolved. Plaintiff also reported that on January 6, 2004, she was having intermittent right leg pain and weakness that resulted in her twisting her ankle. Plaintiff advised Dr. Miller that the problem was related to the August 2, 2003 injury and that she had mentioned it before that date. Dr. Miller ordered an MRI, which revealed a central disc protrusion at L5-S1 with spondylosis and subarticular stenosis. He then prescribed a lumbar epidural steroid injection and physical therapy.
7. The lumbar epidural steroid injection did not give plaintiff any relief. A discogram was ordered, which indicated that the L5-S1 interspace was causing plaintiff's pain. On May 24, 2004, Dr. Miller operated to decompress and fuse the L5-S1 interspace. Plaintiff's right leg symptoms improved after the operation, but she developed symptoms in her left leg. Plaintiff testified that as of September 28, 2004, her neck condition completely resolved. No medical reports from Dr. Miller were submitted into evidence after September 28, 2004.
8. Defendants admitted liability for plaintiff's August 2, 2003 neck injury, pursuant to a Form 60 filed with the Industrial Commission. Defendants paid compensation to plaintiff for temporary total disability and paid for the medical treatment she received for her neck and arm symptoms. At the time of the Deputy Commissioner's hearing, defendants continued to pay plaintiff temporary total disability compensation. However, defendants denied liability for plaintiff's lumbar spine problems, since there was no record of any back or leg complaints until October 15, 2003, when plaintiff underwent the nerve testing. The physical therapist's note from October 15, 2003 documented plaintiff's history of a neck and back injury on August 2, 2003, but recorded complaints of mid-back pain, not low back pain. Plaintiff also completed a pain drawing that day that indicated she was having symptoms in her mid-back and right leg.
9. Defendants requested an independent medical examination and, on June 15, 2005, Dr. Robert Elkins, an orthopedic surgeon, examined plaintiff and reviewed her medical records. Dr. Elkins was unable to find a causal relationship to a reasonable degree of medical probability between the August 2, 2003 injury and the low back problems later diagnosed and treated. Dr. Elkins stated that, taking into account her entire back as of June 15, 2005, plaintiff could perform light duty work with occasional 20-pound lifting, frequent ten-pound lifting, and no repetitive bending, stooping or squatting.
10. As of the date of the Deputy Commissioner's hearing, plaintiff had not returned to work in any capacity since August 2, 2003. Since the release to light duty work on June 15, 2005, plaintiff has not looked for work.
11. Following her injury on August 2, 2003, plaintiff did not report symptoms of low back pain to her supervisor, the emergency room staff, or to Nash Urgent Care staff. The first time plaintiff mentioned back pain other than in her neck area was on October 15, 2003, which was over two months after the injury, and her complaints on that date were of mid-back pain, not low back pain. Plaintiff did not present any expert medical evidence that would tend to establish a causal relationship between her injury of August 2, 2003 and the low back and right leg symptoms for which she was treated beginning on January 6, 2004.
12. The Full Commission finds that the lumbar spine condition for which plaintiff was treated beginning on January 6, 2004 was not proven by the greater weight of the evidence to have been causally related to the injury by accident giving rise to this claim.
13. There was no evidence of any unpaid workers' compensation benefits related to the neck and shoulder injury for which defendants have admitted liability.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants admitted the compensability of plaintiff's injury by accident to her neck and arm on August 2, 2003 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154,542 S.E.2d 277 (2001).
2. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
3. In the present case, plaintiff was capable of performing light duty work as of June 15, 2005. Plaintiff did not meet her burden to prove that since June 15, 2005, she was unable to obtain employment after a reasonable effort or that it was futile for her to seek employment because of other factors. She was capable of some work and no doctor took her out of work. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, supra. Thus, plaintiff is entitled to temporary total disability benefits from August 2, 2003 and continuing until June 15, 2005. N.C. Gen. Stat. § 97-29.
4. Plaintiff's lumbar back condition for which she was treated beginning on June 6, 2004, was not causally related to the compensable injury by accident occurring on August 2, 2003. N.C. Gen. Stat. § 97-2
(6); Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980).
5. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her lumbar back condition. N.C. Gen. Stat. § 97-2et seq.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $394.68 per week from August 2, 2003 and continuing until June 15, 2005.
2. Plaintiff's claim for workers' compensation benefits for her lumbar back condition is hereby DENIED.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Each side shall pay its own costs.
This 20th day of October, 2006.
 S/___________________ LAURA KRANIFELD MAVRETIC, COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH, COMMISSIONER
 S/_______________ DIANNE C. SELLERS, COMMISSIONER